Nancy Ann Creighton et al., Appellees, v. County of Pope, Appellant.

J. L. Owens et al., Appellees, v. County of Pope, Appellant.

Opinion filed September 18, 1943.

J. ADO WHITESIDE, State's Attorney, TAYLOR E. WILHELM, of Ottawa, and PARKE H. DAUGHERITY, of Streator, for appellant.

CHAS. DURFEE, of Golconda, C. O. CONLEY, of East St. Louis, and GROVER E. HOLMES, of Metropolis, for appellees.

Mr. Justice BRISTOW delivered the opinion of the court.

Plaintiffs, appellees here, were awarded judgments against the County of Pope in various separate amounts ranging from $831.25 to $1,825. One of the plaintiffs is Carlos Craig, who is still living. The other plaintiffs are respective administrators of. the estates of seven deceased blind persons.

It is contended that Carlos Craig also is blind. These judgments were rendered for the respective amounts of money due under the act called, "An Act for the Relief of the Blind," approved May 11, 1903 as amended. The cases were consolidated in this appeal.

Except as to Carlos Craig, it is admitted that each deceased blind person had fully qualified under this act and was entitled to receive payments under this act up to the time of his death, and that such payments have not been paid by the County of 'Pope. There is no dispute as to the amount of any judgment.

Appellees contend that, since these benefit payments had become due and payable before the date of death, the personal representative can now recover same by an action against the county.

Appellant concedes in his brief that the "blind recipient has during his lifetime a right of action to obtain judgment against the county for the amount due him."

Appellant contends that the court erred in entering each of these judgments for several reasons. It insists that pensions and public charity are not contractual obligations; that there was no duty at common law to assist the poor and afflicted; that the statute is silent and does not provide that the right of the blind person to receive such benefit payments survives to his personal representative; that the intention of the legislature was to give bounty only direct to the blind person and that it was not to permit his estate to be enriched by collection of such unpaid amounts; that such claim is purely personal which could not be assigned and therefore, that the right of action died with the claimant; that since some of these blind persons never went into court to enforce payment of these amounts, they "could have waived their rights" and that now their personal representatives are assuming to decide for them after their death, and that collection of these amounts by the personal representatives would, in effect, be giving charity to estates and heirs, contrary to the intention of the legislature.

Appellant urges error for the entry of judgment in favor of Carlos Craig claiming that he did not make proof showing that he was entitled to blind relief; that he did not prove that he is legally blind; that the trial court, by guess, found that he is blind; that the blind examiner could only certify him as blind and the board of commissioners of Pope County were justified in denying him blind relief.

The modern view of public duty to the helpless and unfortunate has changed the aspect of thought on that subject. On our statute books today are written many laws providing for the payment of money from the public treasury for the direct support of such un-

fortunate individuals. The words "relief" and "benefit" and such like terms appear in the title and wording of these various acts. Such benefit payments are provided for school teachers, widows, policemen and their widows and children, firemen, widows of soldiers and others, including blind citizens.

The Supreme Court of Illinois in *People v. Lyons,* 374 Ill. 557, at pages 562, 563, quotes with approval this language: "It is the unquestioned right and imperative duty of every enlightened government, in its character of *parens patriae,* to protect and provide for the comfort and well-being of such of its citizens as, by reason of infancy, defective understanding, or other misfortune or infirmity, are unable to take care of themselves. The performance of this duty is justly regarded as one of the most important of governmental functions."

These statutes are founded on public policy and have as their fundamental basis the proper care and support of certain indigent members of the general public to protect them from demoralizing influences of ill nurture, disease and threat therefrom to the public at large, squalid surroundings, and to avoid necessity and expense of committing such persons to State institutions. These statutes are bottomed upon the theory that it is more advantageous to the State to anticipate such a necessity and to supply the needs of the person by payment of money directly for their living and support. These statutes as a general rule, are separate and distinct from the poor laws, and it is generally considered that the system set up is not a part of the system of poor relief. Payments are usually made periodically. They are commonly called pensions. They are gratuitous payments made as part of the public civil pension system.

Since the beginning of this nation, it has been considered that the service of a man in the military force of this country was sufficient to create a duty upon the

public to make payments to him from the public treasury. These payments are military pensions. The underlying thought and realization of obligation and duty of the State has been extended to two other classes of pensions. In one class are found those who have been in public employment, such as firemen, policemen and their widows and children and school teachers; in the other class are afflicted persons such as the old aged, the indigent mother and her children, and the blind.

All such payments, both military and civil, are generally classified in the statutes of Illinois under the heading of charities. They are all based upon the theory of relief, aid and support. The words "benefit, aid and relief" may be noted throughout the text of almost all of these statutes. The Mother's Pension Act is an act which reads as follows: "An Act to provide aid to dependent children in their own home." This act provides that the mother "may file an application for relief." Another act is an act to grant "relief" to indigent war veterans and their families. Another act is entitled "An Act for the relief of the blind." This act in numerous places refers to "benefit" which the blind person "is entitled to receive."

One constantly hears and reads of soldiers' pensions and bonuses, policeman's pensions, fireman's pensions, old age pensions, widows' pensions, and blind pensions. The tendency seems to evade denoting such persons as paupers who are receiving public aid, charity and alms. The more dignified term of pension is more commonly heard. It imports respect to the recipient and implies duty and obligation upon the State to specifically care for such class of its citizenry.

An examination of this "Act for the relief of the Blind," Ill. Rev. Stat. 1941, ch. 23, p. 308 [Jones Ill. Stats. Ann. 18.071 et seq.], will establish this modern conception of this duty.

In this act are found certain statements as follows: In section 1, "It is lawful for and OBLIGATORY UPON EACH COUNTY of this state to contribute such sums of money . . . TOWARD THE SUPPORT of each blind person"; in section 1½, "Such county SHALL levy and collect a special tax for the purpose of PAYING SUCH SUPPORT . . . which fund is hereby created and USED FOR THE SUPPORT OF BLIND PERSONS as herein above provided"; in section 2, "That all male persons . . . and all female persons . . . SHALL RECEIVE AS A BENEFIT"; in section 4, "It is hereby made the DUTY of the Board of County Commissioners . . . to appoint a regularly practising physician whose official title shall be 'Examiner of the Blind'"; in section 6, "All persons claiming the BENEFIT provided herein may . . . make affidavit . . . which shall be deemed an application for said BENEFIT"; in section 7, "And such applicant shall BE ENTITLED TO SAID BENEFIT"; in section 8, "It is hereby made the DUTY of the Board of County Commissioners . . . to provide in the annual appropriation for the PAYMENT OF persons SO ENTITLED TO SAID BENEFIT . . . and to cause warrants . . . to be drawn . . . payable to each of said persons . . . each month . . . during the life of said persons. . . . Said Board shall also provide . . . for PAYMENT OF PERSONS who may become entitled thereto."

Examination of the provisions of this act reveals that it was the intention of the legislature that a mandatory duty be imposed upon the county to pay benefits "for" and "toward the support" of the blind and that the blind person be "entitled to the benefit." There is no positive provision in the act itself stating that the blind person could not assign a warrant received, or an amount accrued and due. There appears no prohibition against payment of amounts accrued and due upon death to the administrator of his estate.

The groceryman, the doctor, and the landlord will have little faith in the credit risk of a blind pensioner,

should his pension be paid only when and if he lives long enough to collect from a county that may be in financial distress. Appellant concedes that at the expiration of each month, a blind person can sue the county, obtain judgment, and in that way and that way alone, give his creditors assurance that their accounts will be paid. Certainly no such burden as that should be placed on this afflicted class in order that they might eat, sleep, and continue well. This legislation was designed to assist the blind, and not to burden and embarrass them, and every reasonable and liberal construction should be accorded such legislation in order that its helpful and beneficial purposes may be fully accomplished.

A vested right of action is property in the same sense in which tangible things are property. Vested rights may be created by statute. 6 R. C. L., p. 308, secs. 294, 295; 11 Am. Jur., p. 1206, sec. 377; p. 1200, sec. 371; 6 R. C. L., p. 316, sec. 304; p. 306, sec. 292. Where a cause of action does survive, it is a property right. *Havill v. Havill*, 332 Ill. 11.

The Supreme Court of Illinois has determined that when payments under this blind pension act have accrued and become due and payable, the beneficiary has a vested right to sue the county for the amounts due. *Proffitt v. County of Christian*, 370 Ill. 530. The Supreme Court determined there that such payments are not considered as a gift or bounty; that the act requiring the county to provide for and make such payments as a public charity are in the same class as support of dependent children; that the general assembly imposed the obligation upon the county, as a duty; that the act declared the qualified blind person to be "entitled to said benefit"; and that, therefore, he was entitled to judgment of court to enforce his right.

This court has had before it and has passed upon the precise question involved in this appeal. We have held

that the administrator does have the right to recover such payments accrued during the lifetime of the blind decedent. In *People ex rel. Powles v. County of Alexander*, 310 Ill. App. 602, the identical arguments were urged there by the appellants as in the instant case, namely; that the blind pension act does not make any provision for the survival of any rights accruing thereunder, and that section 123 of the Administration Act makes no provision for the survival of such cause of action. We there held that the cause of action did survive for the reasons recited in our opinion that, when the expectancy of benefit became due, it changed from a mere expectancy to a present vested property right; that the obligation took the form of a debt owing by the county, implied in law or quasi contract; and that the liability then became one for money had and received. 12 Am. Jur., pp. 502, 503, sec. 6. In legal contemplation, the County of Pope assumed to perform a duty enjoined upon it by law. A right of action in assumpsit lies upon an implied contract. *St. Hedwig's Industrial School for Girls v. County of Cook*, 289 Ill. 432.

An examination of the record shows that the original plaintiff, Mary Lou Poe, died during the pendency of this suit and that her administrator was substituted as plaintiff. The Appellate Court of Illinois for the third district in the case of *Lyons v. County of Morgan*, 313 Ill. App. 296, had for consideration a like case where the plaintiff died while the suit was pending. The Appellate Court affirmed the judgment entered in favor of the substituted administrator.

A view contrary to the holding of this court has been taken by the second district of the Appellate Court in the case of *People ex rel. Shippey v. County of La Salle*, 310 Ill. App. 541. We have carefully considered that case. In the light of what has been said above and the decision of the Supreme Court of this State in

*Proffitt v. County of Christian*, 370 Ill. 530, we are constrained to adhere to the holding we made in *People ex rel. Powles v. County of Alexander*, *supra*.

Appellant advances the argument that the right of the blind person to benefits was personal, and, hence, could not survive. An illustration would be an agreement for the performance of legal services which is personal and unassignable, but when such legal services have been rendered and certain definite payments have become due, the right becomes a vested property right and such right then would survive. *Galpin v. City of Chicago*, 269 Ill. 27, 56. By the same token, blind benefits which have accrued and which should have been paid, and only payment remains to be performed become vested property rights and assets of the estate of the blind person upon his death. We find no provision in this act making any condition to the contrary. If a blind person received his benefits and did not spend the same, they would be assets of his estate upon his death, subject to the payment of his debts. If he received such payments and did not expend the same, but received his personal support by supplies purchased on credit, his creditors would be entitled to payment out of his estate which, under such illustration, would be money received from the public treasury. Appellant argues with great repetition that if an estate of a blind person obtained possession of moneys which the State intended for the support of the blind person, such funds could not be assets of an estate. Collection from the county by the administrator of payments due and vested would not be the granting of charity to the administrator as appellant contends. It would merely be payment to the estate of an obligation which the decedent would have possessed had the county performed its duty and paid him.

In *North Chicago St. R. Co. v. Ackley*, 171 Ill. 100, the Supreme Court of Illinois quotes with approval, as follows: "So, too, equity will not recognize assign-

ments of certain species of property which it would be against the policy of the law to allow the owners to part with. These are, pensions . . . the salaries of judges, and other revenues and emoluments of a kindred character which reasons of State require should remain always for the benefit of the person to whom they were originally given. . . . Yet in all these cases any balance unpaid at the time of death would survive to the personal representative. But the right of assignment is precluded on principles of public policy.''

By analogy, we believe that each of these rights of these deceased blind persons to recover accrued and unpaid pension payments from the County of Pope survives to the personal representative.

Appellees contend that these claims of these blind persons were choses in action. Appellant in its brief asserts ''the deceased persons herein, while they were alive, had choses in action that they never reduced to possession.'' When a claim is not assignable because of some personal prohibition, and it develops into a chose in action, it then is assignable and enforceable under section 18 of the Civil Practice Act. *Ginsburg v. Bull Dog Auto Fire Ins. Ass'n,* 328 Ill. 571. Appellant claims as error the fact that the deceased persons ''could'' have waived their right to recover from the county. The answer of the appellant did not rely upon waiver. Illinois Civil Practice Act, sec. 43 (4). Furthermore, we find nothing in the record establishing waiver. Waiver is the intentional relinquishment of a known right. We find nothing in this record showing that any of said blind persons waived their rights. *First Lutheran Church of Pontiac v. Rooks Creek Evangelical Lutheran Church,* 316 Ill. 196.

The case of the living plaintiff, Carlos Craig, requires a separate consideration.

A line of the blind register of the clerk was introduced in evidence showing that an order for $90 was issued to him on January 2, 1930. The defendant then

offered in evidence the record of the County Commissioners dated June 16, 1931, reading as follows: "New application was made by Carlos Craig for blind. Same referred to Dr. Barger for examination. Claim refused upon report of Dr. Barger (partially blind)." Defendant then offered a further record of the Commissioners dated December 21, 1931, reciting that it was that day ordered by the board "that all of the applications for blind relief that were properly endorsed by the examining physician, Dr. L. S. Barger, as being totally blind, be allowed, and placed on the blind relief, same to be in effect January 1, 1931." It appears that the foregoing was all the evidence in the case of Carlos Craig.

Appellant contends that until the record shows that a person is blind and that he has been placed on the roll, he is not entitled to relief. *People ex rel. Howse v. County of Shelby,* 257 Ill. App. 349.

Carlos Craig, in his brief, simply refers to a paragraph in the original complaint which alleged that all plaintiffs were duly certified by the examiner as qualified and that the County made provisions for the payment of each of said persons, and that they were placed on the roll. Carlos Craig then states in his brief that such allegations were admitted in the amended answer of the County. An examination of the record itself shows that on January 25, 1940, defendant filed its amended answer and in same did admit such allegations. The record further shows that the defendant, on November 4, 1940, filed another amended answer in which it specifically denied each of said allegations of the complaint. It appears that the case went to trial on the complaint and on the second amended answer.

Appellee Carlos Craig has cited no authorities in support of his extremely brief discussion of the judgment rendered in his favor. In his brief he simply

quoted the said allegations in the complaint and stated that they had been admitted.

The statute of Illinois provides for an orderly procedure to be followed before a person, even if blind, would be entitled to benefits. The provisions of the statute are found in pars. 282–286, secs. 4–8, Ill. Rev. Stat., ch. 23 [Jones Ill. Stats. Ann. 18.074–18.078].

The preceding section 2½ defines who shall be classified as a blind person. Section 4 provides for the appointment by the county commissioners of a practicing physician whose official title shall be "Examiner of the Blind." Section 5 prescribes the duty of examiner, requiring him to examine applicants to issue certificate showing whether or not the person is blind, and to keep a register. Section 6 provides that all persons claiming the benefit may go before the county clerk and make an affidavit which shall be deemed an application for the benefit, and that the clerk shall thereupon refer the application to the examiner. Section 7 provides that the county clerk shall certify to the county commissioners names of applicants so determined by the examiner to be entitled to the benefit. Section 8 provides that the county commissioners shall provide in its annual appropriation for the payment of such persons so entitled to such benefit. It seems to us clear from all the evidence that it wholly fails to show that Carlos Craig has been confirmed as a blind person or has been placed upon the roll by the action of the county board of commissioners.

In the case of *People ex rel. Howse v. County of Shelby*, the court also considered a petition for writ of mandamus directed to the Board of Supervisors commanding them that they forthwith take lawful steps to grant the application of the petitioners and to pay them blind relief. The court denied the writ. It referred to section 8 of the act, and pointed out that there was no averment in the petition that the exam-

iner had made the certificate showing that applicant was blind, and concluded with the following: "The act also requires that the persons claiming the contribution of money from the county shall be blind; not partially blind or industrially blind; and that the certificate of the examiner shall certify that they are blind."

In the instant case, a judgment is sought against the county. We believe that before a judgment can properly be taken against the county for such unpaid benefits, that it is first necessary that it be shown, affirmatively, that the procedure prescribed by the act has been followed and that such person by the records is shown to be on the roll of blind persons.

From the foregoing, we are of the opinion that the court in this case erred in rendering judgment in favor of Carlos Craig, and that the same should be reversed and remanded, and hereby the same is reversed and remanded as to Carlos Craig.

We are further of the opinion that the court did not err in rendering judgment in favor of the plaintiffs, Arthur Poe, as administrator of the estate of Mary Lou Poe, deceased; Mae Hatton, as administratrix of the estate of Gus Hatton, deceased; Hosea Hogg, as administrator of the estate of Lewis Hogg, deceased; Maggie Stanphill, as administratrix of the estate of William Stanphill, deceased; E. B. Clark, as administrator of the estate of Bird Jamison, deceased; Mattie Glass, as administratrix of the estate of Hiram Glass, deceased; and that said judgments in favor of said respective administrators should be and the same are hereby affirmed.

*Reversed and remanded as to Carlos Craig.*
*Affirmed as to all other appellees.*